# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

United States of America

v.

1. Eduardo Valenzuela Lopez
2. Jael Gonzalez Banuelos

Case No.: 26-5079MJ

**CRIMINAL COMPLAINT**

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

On or about the date of February 24, 2026, in the County of Maricopa, in the District of Arizona and elsewhere, the defendants, Eduardo Valenzuela Lopez and Jael Gonzalez Banuelos, violated Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)(vi), an offense described as follows:

Conspiracy to distribute 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II controlled substance.

I further state that I am a Task Force Officer with the United States Drug Enforcement Administration (DEA) and that this complaint is based on the following facts:

**See Attached Statement of Probable Cause Incorporated By Reference Herein.**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

AUTHORIZED BY: AUSA William Bryan

*Digitally signed by WILLIAM BRYAN
Date: 2026.02.24 21:06:25 -07'00'*

Robert V. McCabe, Task Force Officer, DEA
Name of Complainant

ROBERT MCCABE
*Digitally signed by ROBERT MCCABE
Date: 2026.02.24 21:02:17 -07'00'*
Signature of Complainant

Sworn to telephonically and subscribed electronically

Feb. 25, 2026 @ 8:20 a.m. at
Date

Phoenix, Arizona
City and State

HONORABLE DEBORAH M. FINE
United States Magistrate Judge
Name & Title of Judicial Officer

Deborah M Fine
Signature of Judicial Officer

## STATEMENT OF PROBABLE CAUSE$

I, Robert V. McCabe, Task Force Officer ("TFO") of the United States Drug Enforcement Administration ("DEA"), being duly sworn, declare and state as follows:

### INTRODUCTION AND BACKGROUND OF AFFIANT

1. Your Affiant, Robert V. McCabe (hereafter referred to as "Affiant"), is currently a TFO with the DEA. I have been a DEA TFO since October 1, 2021. As such, I am an investigator or law enforcement officer of the United States empowered by law to conduct investigations and make arrests for any felony offense cognizable under the laws of the United States, pursuant to Title 21, United States Code, Section 878.

2. Your Affiant is currently assigned to the Phoenix Field Division, Group 11 ("DEALERS"). DEALERS is an enforcement group comprised of agents and officers from federal and local agencies, assigned to investigate large-scale drug trafficking.

3. In addition to being a DEA TFO, I am a Detective with the City of Goodyear Police Department ("GPD"), and I have been employed with the GPD since August 2016. I have been assigned to the GDP Special Investigations Unit since July 2017. I also served in the GPD as a uniformed patrol officer and a Crisis Intervention Officer ("CIT"). Previously, I was employed by the Scottsdale Police Department ("SPD") as a sworn officer from November 2006 to July 2016.

4. During my tenure as a law enforcement officer, I have conducted and participated in numerous drug investigations, to include actions taken to both prevent the sale and use of illegal substances including marijuana, cocaine, ecstasy, heroin and methamphetamine that resulted in felony arrests. I have also conducted and participated in numerous drug investigations involving the abuse and illegal sale of prescription medications that resulted in felony arrests.

5. Your Affiant is familiar with the methods used in drug-trafficking operations and the drug-trafficking patterns employed by drug trafficking organizations ("DTOs"). During your Affiant's tenure with the DEA, your Affiant has become knowledgeable of the methods and the language typically used by DTOs. Your Affiant knows that drug-traffickers often require the use of one or more communication facilities to coordinate

times, places, and procedures for importing, concealing, and distributing controlled substances, and for arranging the disposition of drug-trafficking proceeds.

6. The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training, and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; analysis of public records; analysis of social media information; analysis of telephone records; and analysis of financial records.

7. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested complaint, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## PROBABLE CAUSE

8. In early February, 2026, a DEA confidential source of information ("CS") began telephonic communication with a Phoenix-based source of fentanyl, later identified as Eduardo Valenzuela Lopez (hereafter, "VALENZUELA LOPEZ"). The CS had been communicating with VALENZULA LOPEZ by contacting telephone number 949-929-9368 (the "9368 Telephone").

9. The CS is currently working with investigators in exchange for financial compensation. Information provided by the CS has proven to be reliable based on independent investigation conducted and corroborated by Special Agents of the DEA. This CS has been involved in numerous DEA operations which have resulted in the seizure of fentanyl, methamphetamine, cocaine, and drug proceeds.

10. As a result of the CS' communications with VALENZUELA LOPEZ, the CS agreed to purchase 120,000 pills containing fentanyl at a price of $0.50 cents per pill, for a total price of $60,000 United States dollars ("USD"). VALENZUELA LOPEZ informed the CS that he (VALENZUELA LOPEZ) wanted to conduct a "dry meet" (that is, a face to face meeting to discuss prices and logistics of a transaction, often to build trust prior to the transaction) with the CS prior to the fentanyl pill transaction. Following the dry

meet, and the CS and VALENZUELA LOPEZ would conduct a 10,000-fentanyl pill transaction. The CS and VALENZUELA LOPEZ agreed to meet on February 23, 2026. The CS recorded these communications with VALENZUELA LOPEZ.

11. Law enforcement intelligence conducted indices checks of the 9368 Telephone used to communicate with VALENZUELA LOPEZ. The indices checks revealed VALENZUELA LOPEZ to be associated with the 9368 Telephone. Law enforcement intelligence indicated that VALENZUELA LOPEZ was the registered owner of a Dodge Ram 1500 bearing State of Arizona license plate "53A44S" (hereafter, the "Target Vehicle"). Law enforcement intelligence also indicated that VALENZUELA LOPEZ was associated with an address located on West Taylor Street, in Phoenix, Arizona (hereafter, the "Target Residence").

12. On February 23, 2026, the CS met with VALENZUELA LOPEZ to conduct the "dry meet". VALENZUELA LOPEZ arrived at the "dry meet" location driving a red Dodge Ram 1500 bearing State of Arizona license plate "53A44S" (the Target Vehicle). During the meeting, VALENZUELA LOPEZ informed the CS that VALENZULEA LOPEZ obtains fentanyl pills from Mexico. VALENZUELA LOPEZ offered to immediately sell the CS 10,000 fentanyl pills. However, VALENZUELA LOPEZ was unable to find an available local courier to transport the fentanyl pills to his (VALENZUELA LOPEZ's) location. VALENZUELA LOPEZ informed the CS that he (VALENZUELA LOPEZ) currently had a kilogram "brick" of fentanyl powder at his (VALENZUELA LOPEZ's) residence, and that he (VALENZUELA LOPEZ) would have 150,000 fentanyl pills delivered to him (VALENZUELA LOPEZ) the next day for VALENZUELA LOPEZ to bring to the CS for the transaction. VALENZUELA LOPEZ stated that he (VALENZUELA LOPEZ) needed leave for work soon and departed the area driving the Target Vehicle.

13. Law enforcement officers continued surveillance of VALENZUELA LOPEZ. Investigators observed VALENZUELA LOPEZ drive to and then enter with a residence located on West Taylor Street, in Phoenix, Arizona (the Target Residence). A few minutes after VALENZUELA LOPEZ entered the Target Residence, the CS received

a photograph of what appeared to be a kilogram "brick" of suspected fentanyl powder with a visible "LV" logo in a plastic vacuum sealed package. The photograph depicted an unidentified individual holding the vacuum sealed package and a plastic shopping bag in what appeared to be a bedroom with a dresser and shoes on the ground. Law enforcement officers displayed a photograph of VALENZUELA LOPEZ obtained from law enforcement databases to the CS, and the CS confirmed the individual depicted in the photograph to be the same individual the CS had previously met.

14. Investigators debriefed the CS regarding the interaction with VALENZUELA LOPEZ. Investigators learned from the CS that VALENZUELA LOPEZ stated that he (VALENZUELA LOPEZ) would obtain 150,000 fentanyl pills, and that he (VALENZUELA LOPEZ) claimed to possess a kilogram "brick" of fentanyl powder. VALENZUELA LOPEZ stated that the fentanyl powder was at his (VALENZUELA LOPEZ's) residence (the Target Residence).

15. Investigators instructed the CS to continue communicating with VALENZUELA LOPEZ and arrange a purchase of fentanyl for the morning of February 24, 2026. In compliance with law enforcement officers' instructions, the CS continued communicating with VALENZUELA LOPEZ. The CS learned from VALENZUELA LOPEZ that he (VALENZUELA LOPEZ) is 33 years old, entered the US via a visa several years prior, and has resided in Phoenix for a couple of years. VALENZUELA LOPEZ also advised the CS that he (VALENZUELA LOPEZ) would have the fentanyl pills with him (VALENZUELA LOPEZ) and that he (VALENZUELA LOPEZ) would be ready for the transaction in the morning.

16. On February 24, 2026, investigators established surveillance at the Target Residence. Investigators observed the Target Vehicle parked at the Target Residence. At approximately 9:07 AM, investigators observed VALENZUELA LOPEZ exit the Target Residence and park the Target Vehicle within the driveway of the Target Residence. VALENZUELA LOPEZ then returned to the Target Residence. At approximately 9:15 AM, investigators observed an unidentified male (later identified as Jael Gonzalez Banuelos (hereafter, "GONZALEZ BANUELOS")) arrive at the Target Residence driving

an unknown vehicle. GONZALEZ BANUELOS entered the Target Residence. GONZALEZ BANUELOS was wearing a black hoodie with white writing on the front, dark pants, white sneaker style shoes, and a backwards-facing black hat.

17.    At approximately 9:30 AM, VALENZUELA LOPEZ exited the residence, entered the driver's side of the Target Vehicle, drove to a Burger King parking lot in the vicinity of North 67th Avenue and West Van Buren Street in Phoenix, drove in a circle in the parking lot, and then returned to the Target Residence. While the Target Vehicle was parked in the driveway of the Target Residence, due to the observation vantage points of law enforcement surveillance officers, investigators were unable to observe whether anyone had accessed the front passenger side of the Target Vehicle. Your affiant believes that GONZALEZ BANUELOS may have entered the Target Vehicle during this timeframe. VALENZUELA LOPEZ returned to the Target Residence and parked the Target Vehicle on the street in front of the Target Residence. VALENZUELA LOPEZ then exited the Target Vehicle, accessed the passenger side area of the Target Vehicle, and walked away from the Target Vehicle with what appeared to be a black plastic bag in his hands. VALENZUELA LOPEZ entered the Target Residence with the black plastic bag. At approximately 9:36 AM, VALENZUELA LOPEZ exited the Target Residence with what appeared to be the same black plastic bag and entered the Target Vehicle. VALENZUELA LOPEZ then returned to the Target Residence.

18.    During this timeframe, the CS communicated with VALENZUELA LOPEZ, who indicated that he (VALENZUELA LOPEZ) was ready with 150,000 fentanyl pills. VALENZUELA LOPEZ informed the CS that the fentanyl transaction would occur as follows: VALENZUELA LOPEZ would bring 50,000 fentanyl pills to the Family Dollar store located at North 67th Avenue and West Van Buren Street in Phoenix, exchange the fentanyl pills for the agreed upon amount of USD, and allow the CS to inspect a sample of the fentanyl powder. After the first exchange, VALENZUELA LOPEZ would retrieve the remainder of the fentanyl from his (VALENZUELA LOPEZ's) residence to complete the second transaction for fentanyl pills and fentanyl powder.

5

19. Investigators established surveillance at the Family Dollar parking lot located at 400 North 67th Avenue in Phoenix. Law enforcement officers provided the CS with a recording device and instructed the CS regarding the fentanyl delivery. The CS was positioned on the east side of the Family Dollar parking lot. The CS made a telephone call to VALENZUELA LOPEZ to advise VALENZUELA LOPEZ of the CS' arrival.

20. At approximately 9:39 AM, investigators observed VALENZUELA LOPEZ exit the Target Residence and enter the Target Vehicle. Investigators observed VALENZUELA LOPEZ drive the Target Vehicle south on 69th Avenue to West Van Buren Street in Phoenix. Investigators observed the Target Vehicle drive east West Van Buren Street and then north into the Family Dollar store parking lot at 400 North 67th Avenue in Phoenix.

21. Investigators observed VALENZUELA LOPEZ meet with the CS. According to the CS, GONZALEZ BANUELOS displayed to the CS what appeared to be fentanyl pills from within a plastic bag. The CS advised investigators that the suspected fentanyl pills were present within the Target Vehicle. Investigators then moved into position to detain the occupants of the Target Vehicle by activating their emergency lights and sirens within their assigned law enforcement vehicles.

22. As investigators approached the Target Vehicle wearing clearly marked "Police" insignias, VALENZUELA LOPEZ retrieved a handgun and began shooting west towards investigators and towards the building of the Family Dollar store. After shooting at investigators, VALENZUELA LOPEZ pointed the gun at the CS while going to the ground. The CS fled the immediate area on foot. GONZALEZ BANUELOS exited the passenger side of the Target Vehicle and fled northbound on foot. Law enforcement officers subsequently apprehended both VALENZUELA LOPEZ and GONZALEZ BANUELOS.

23. During a search of the Target Vehicle incident to the arrest of VALENZUELA LOPEZ and GONZALEZ BANUELOS, investigators discovered a green handgun on the ground on the driver's side of the Target Vehicle, a black bag containing a large quantity of suspected fentanyl pills on the front passenger's floorboard of the Target

Vehicle, and a currency counting device within the passenger compartment of the Target Vehicle. Due to the police-involved shooting event, law enforcement officers were unable to access and weight the entire black plastic bag containing suspected fentanyl pills. However, law enforcement officers obtained a small sample of the suspected fentanyl pills from the black plastic bag and conducted a field-test. The field-test indicated presumptive positive for the presence of fentanyl.

24. At approximately 2:49 PM, law enforcement officers obtained a warrant to search the Target Residence. At approximately 3:00 P.M., law enforcement officers executed the warrant to search the Target Residence.

25. During the search of the Target Residence, investigators identified the bedroom utilized by VALENZUELA LOPEZ based upon items discovered therein. Within said bedroom, law enforcement officers discovered a "brick" of suspected fentanyl powder. The total gross weight of the suspected fentanyl powder (including packaging) was approximately 1.098 kilograms. Law enforcement officers thereafter conducted a field-test of a sample of the suspected fentanyl powder, which indicated presumptive positive for the presence of fentanyl.

26. Law enforcement officers thereafter administered VALENZUELA LOPEZ his *Miranda* rights. VALENZEULA LOPEZ acknowledged his *Miranda* rights and agreed to speak with law enforcement officers without an attorney present. VALENZUELA LOPEZ admitted to investigators that he (VALENZUELA LOPEZ) was present for the fentanyl transaction and that he (VALENZUELA LOPEZ) possessed the items that were exchanged in his (VALENZUELA LOPEZ) vehicle. VALENZUELA LOPEZ stated he picked up the fentanyl pills on the way to the transaction. VALENZUELA LOPEZ stated that he (VALENZUELA) believed that the items were fentanyl pills and he believed there was a sample of fentanyl powder within the bag. VALENZUELA LOPEZ advised that he expected to be paid $500 in USD for assisting with the transaction. VALENZUELA LOPEZ stated he was supposed to receive $20,000 in USD in exchange for the pills.

27. Law enforcement officers thereafter administered GONZALEZ BANUELOS his *Miranda* rights. GONZALEZ BANUELOS acknowledged his *Miranda*

warnings and agreed to speak with law enforcement officers without an attorney present. GONZALEZ BANUELOS told investigators that he (GONZALEZ BANUELOS) was with VALENZUELA LOPEZ when VALENZUELA LOPEZ received a package containing what he (GONZALEZ BANUELOS) learned later to be fentanyl pills. GONZALEZ BANUELOS stated that he (GONZALEZ BANUELOS) displayed the bag containing blue fentanyl pills to the CS during the transaction. GONZALEZ BANUELOS stated that he (GONZALEZ BANUELOS) was not going to be paid for assisting with the transaction. GONZALEZ BANUELOS believed that there were three packages of blue fentanyl pills present in the bag and that the fentanyl packages were worth approximately $20,000 in USD each.

28. Based on facts and circumstances stated in this Affidavit, I submit there is probable cause to believe that VALENZUELA LOPEZ and GONZALEZ BANUELOS did knowingly and intentionally conspire to distribute 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)(vi).

ROBERT MCCABE  Digitally signed by ROBERT MCCABE
Date: 2026.02.24 21:02:53 -07'00'
_____
Robert V. McCabe
Task Force Officer
U.S. Drug Enforcement Administration

Subscribed electronically and sworn to telephonically on this 25th day of February, 2026. @ 8:30 a.m.

_____
HONORABLE DEBORAH M. FINE
UNITED STATES MAGISTRATE JUDGE